# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JESSIE L. ROSE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-7631-MLCF-SS** |
| **TRAVELERS, et al** | |

## REPORT AND RECOMMENDATION

Pursuant to a referral, four motions are before the undersigned. Rec. doc. 57. For the reasons described below, it is recommended that: (1) the motion of the defendant, The Standard Fire Insurance Company ("Standard Fire"), to deposit settlement funds into the registry of the court, for order of dismissal, and for order compelling plaintiff, Jessie L. Rose ("Rose"), to execute release (Rec. doc. 51) be granted; (2) Rose's motion to deny payment to the intervenor, Jeffrey P. Berniard, (Rec. doc. 50) be referred to a trial on the merits of Berniard's claim of intervention; (3) Rose's motion and application for mental anguish penalties due to bad faith action and delay by Standard Fire (Rec. doc. 55) be denied; and (4) Standard Fire's motion to strike Rose's motion and application for mental anguish penalties (Rec. doc. 59) be dismissed as moot.

## BACKGROUND

Rose filed a "pro se complaint" in state court alleging that Standard Fire (incorrectly named as Travelers) issued a policy of insurance for her property at 339-41 Verret Street, New Orleans, Louisiana, in the Algiers neighborhood about two blocks from the Mississippi River. Rec. doc. 1. The petition sought damages attributed to Hurricane Katrina and penalties pursuant to La. R.S. 22:658 and 22:1220. The petition is signed by Rose. Rec. doc. 1 (Attachment at 6). On October 10, 2006, the case was removed to federal court. Rec. doc. 1.

On May 14, 2007, Berniard filed a motion to enroll as counsel for Rose which was granted. Rec. docs. 7 and 9. On May 22, 2007, a preliminary pre-trial conference was held in which Berniard participated. Rec. doc. 10. The trial was set for April 14, 2008 before the District Judge without jury. Rec. doc. 10. On December 26, 2007, Rose filed an expert witness disclosure with a report from her expert reporting that she sustained $156,000 in damages from the wind forces of Hurricane Katrina, not including mold remediation. Rec. doc. 13

On February 20, 2008, the undersigned set a settlement conference for March 18, 2008. Rec. doc. 17. On March 5, 2008, Standard Fire filed a joint motion to administratively close the case stating:

> The parties have reached a settlement of this matter, contingent only upon approval of the settlement terms by the State of Louisiana, through its Road Home program. The parties do not wish to have the deadlines in this matter run while awaiting approval from the State of Louisiana.

Rec. doc. 18 at 1. The motion was not signed by Berniard or Rose. The District Judge granted the motion. Rec. doc. 20. The settlement conference was removed from the undersigned's calendar. On March 21, 2008, Rose filed a motion for an order requiring Standard Fire to send notice to the Louisiana Attorney General. The motion stated that:

> Upon execution of the Release, and receipt of a check for $75,000.00 dollars in additional compensation of Plaintiff's claims for personal property, structure losses, and loss of use under his (sic) policy, Plaintiff's interest in the litigation is resolved.

Rec. doc. 21. Attached to the motion was a letter dated March 21, 2008, from Berniard to counsel for Standard Fire confirming the settlement agreement. The letter was not signed by Rose. Rec. doc. 21 (Attachment). Prior to any action on this motion, Rose moved to withdraw the motion and requested that the Court sign an order requiring the State of Louisiana to intervene in the action. Rec. doc. 23. The motion was signed by Berniard, but not by Rose.

2

On May 23, 2008, Berniard filed a motion to withdraw as counsel of record. He reported that he was terminated by Rose's daughter, Robin Mizer ("Mizer"), who had a power of attorney for Rose's affairs. He reported that all of his dealings as the attorney for Rose were with Mizer. Rec. doc. 24. On that same day, Berniard filed a motion to intervene for attorneys' fees and expenses. Rec. doc. 25.[1] On May 29, 2008, Mizer, purportedly acting on behalf of Rose, filed an opposition to the motion to intervene. The opposition states that there was no agreement to settle the case. Rec. doc. 29. On June 19, 2008, an order was issued which set the motion to intervene for July 7, 2008. Berniard was ordered to file a reply to Rose/Mizer's opposition to the motion to intervene. The order provided that:

> The reply shall include copies of any documents executed by Rose or Mizer confirming the settlement agreement. If there are no such documents, Berniard shall provide an affidavit stating the basis for his representation to the Court that Rose agreed to a settlement with Standard Fire.

Rec. doc. 34. Mizer was ordered to file a certified true copy of the power of attorney to act for Rose. Id. While Berniard contended that Mizer agreed to the terms of the settlement and produced some e-mails indicating her knowledge of a settlement, he did not produce any writing signed by Mizer confirming the settlement agreement. Rec. doc. 35. On July 2, 2008, Mizer filed a copy of a power of attorney, <u>dated July 1, 2008</u>, and signed by Rose and Mizer before an Alabama notary public. Rec. doc. 41.

On July 1, 2008, Standard Fire sent a letter to Mizer regarding the settlement. The letter described the monetary terms of the settlement with the following allocation of the $75,000:

---

[1] Attached to the motion was a copy of an employment agreement which was signed by Jessie Rose and by the Berniard Law Firm. Both signatures are dated May 14, 2007. Rec. doc. 25 (Attachment). This is the same day on which Berniard moved to enroll as counsel for Rose. The agreement states that "<u>Berniard Law Firm shall not settle your claim without your approval</u>." Id. (emphasis in original). Berniard does not explain the contradiction in his statement that all of his contacts were with Mizer, but Jessie Rose signed the employment agreement.

3

| | |
|---|---|
| Dwelling | $35,000 |
| Other structures | $10,000 |
| Personal property | $15,000 |
| Loss of use | $15,000 |
| Total | $75,000 |

It indicated that Mizer and her mother, Rose, agreed to the terms of the settlement. The letter was signed by Mizer on August 29, 2008 with the indication that she possessed the authority to act for Rose. Rec. doc. 51 (Exhibit A). Road Home had consented to this allocation of the settlement. Rec. doc. 67 (Exhibit 6).

On July 7, 2008, the motion of the Berniard Law Firm for leave to intervene was granted. Rec. doc. 36. Mizer sent a letter, dated July 7, 2008, to the undersigned regarding additional documentation on the intervention issue. Rec. doc. 37. On July 15, 2008, Mizer filed a reply memorandum on behalf of Rose on the intervention issue. Rec. doc. 40.

On October 30, 2008, Jessie Rose signed a motion for leave to file a reply memorandum.[2] Rec. doc. 45. The reply memorandum was signed by Jessie Rose before an Alabama notary public. Rec. doc. 47. Rose stated that, in anticipation of a scheduled surgery, she granted Mizer the power of attorney. She reports that Mizer and Berniard operated with this power of attorney and that a second power of attorney was provided to the Court on July 2, 2008. Rec. doc. 47. She reported that prior filing suit she had an offer from the insurance company to settle for $75,000. Id. (attachment).

On December 3, 2008, Rose filed a motion to re-open the case, which the District Judge granted. Rec. docs. 49 and 57. The motion was signed by Rose only. On December 3, 2008, Rose

---

[2] This is the first pleading signed by Rose since she signed the original petition in proper person.

filed a motion to deny any payment to Berniard. The motion was signed by Rose only. Rose raises numerous issues concerning Berniard's activities as counsel for her, including the assertion that "Berniard accepted a settlement from defendant without securing proper written acceptance." Rec. doc. 50.[3]

On January 7, 2009, Rose moved for mental anguish penalties against Standard Fire. Rec. doc. 55. Standard Fire moved to strike the motion. Rec. doc. 59. Rose filed a reply. Rec. doc. 65. The motion and the reply were signed by Rose only.

On December 15, 2008, Standard Fire moved to place the settlement funds in the Registry of the Court. It reported that the settlement was confirmed by the July 1, 2008 letter from its counsel to Mizer which was signed by Mizer on August 29, 2008 acting pursuant to the July 1, 2008 power of attorney. Rec. doc. 51. Rose submitted an opposition, signed by her, in which she took issue with inclusion of any reference to Berniard as intervener. Rec. doc. 56. Standard Fire submitted a reply on the intervention issue. Rec. doc. 62.

Rose submitted a reply memorandum which she signed. She argues that Standard Fire should pay her $75,000 and she should be permitted to pursue her remaining claims against it, including the claims for mental anguish. Rec. doc. 64.

Standard Fire was ordered to produce all information in its possession reflecting the allocation of the $75,000 among the four coverages found in the policy. Rec. doc. 66. Standard Fire complied with this order. The information may be found at Rec. doc. 67.

## WAS THERE A SETTLEMENT?

---

[3] Berniard contends that these issues should be reserved for the trial on the intervention. Rec. doc. 53.

Louisiana law applies to this claim. Subject matter jurisdiction is present because of diversity jurisdiction. 28 U.S.C. § 1332. Under Louisiana law a settlement agreement must be reduced to writing in order to be enforceable. Felder v. Georgia Pacific Corp., 405 So.2d 521 (La. 1981); and La. Civ. Code Art. 3071. A letter from counsel for plaintiff is not sufficient to comply with the statutory requirement that contracts of compromise be reduced to writing to be valid and enforceable. The plaintiff must "give clear and express consent for his attorney to accept the proposed settlement agreement." Smith v. Schultz, 546 So.2d 596, 597 (La. App. 3rd Cir. 1989); and Dammann v. Molero, 709 So.2d 344, 345 (La. App. 4th Cir. 1998) ("[T]he record is devoid of any evidence showing that plaintiff ever signed a release or settlement offer or authorized his attorney to do so on his behalf.").

There is no evidence that Berniard possessed written authorization from Mizer or Rose to settle the case on the terms described by Standard Fire. If Berniard possessed such documentation, it would have simplified this matter greatly. Berniard has sown further confusion by stating that Rose always acted through Mizer, when the employment agreement was signed by Rose. Berniard did not produce the power of attorney from Rose to Mizer on which he relied to accept instructions from Mizer. Based on the lack of any evidence that Rose agreed in writing to the terms of the settlement reported to the Court on March 5, 2008, the undersigned must conclude that there was no settlement at that time.

On or about May 23, 2008, Mizer contacted Berniard and fired him. Rec. doc. 24. On July 1, 2008, Rose signed a power of attorney in favor of Mizer witnessed by an Alabama notary public. Rec. docs. 41 and 43 (Attachment). Rose acknowledged that she gave Mizer the July 1, 2008 power of attorney and a prior power of attorney. Rec. doc. 47. On August 29, 2008, Mizer signed the July

6

1, 2008 letter from counsel for Travelers demonstrating that Mizer, on behalf of and with authority from Rose, agreed to the terms of the settlement which provided for payment of $75,000. It was also agreed that Rose would execute the release and the Road Home consent form. Rec. doc. 51 (Exhibit A). When Mizer signed the agreement dated August 29, 2008, she possessed Rose's power of attorney. The settlement agreement described in the July 1, 2008 letter from counsel for Standard Fire to Mizer is enforceable under Louisiana law.

It appears that on or about October 30, 2008, Rose began acting on her own behalf and concluded that the settlement amount was insufficient. Rec. doc. 45. But that is too late since a binding settlement agreement was reached on August 29, 2008.

## **RECOMMENDATION**

Because there was a valid settlement agreement which was approved by Road Home, it will be recommended that Standard Fire's motion to submit settlement funds into the Registry of the Court, for order of dismissal and for order compelling plaintiff to execute release (Rec. doc. 51) be granted.

Because Rose's motion to deny payment to Berniard goes to the merits of the claim for intervention, it is recommended that the motion (Rec. doc. 50) be referred to the merits and that a trial be set on Berniard's claim of intervention.

Because there was a valid agreement of settlement, it is recommended that Rose's motion for mental anguish penalties due to bad faith action and delay by Standard Fire (Rec. doc. 55) be denied.

Because it is recommended that Rose's motion for mental anguish penalties be denied, it is recommended that Standard Fire's motion to strike Rose's motion for mental anguish penalties (Rec. doc. 59) be dismissed as moot.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana this 13th day of February, 2009.

_____
**SALLY SHUSHAN**
**United States Magistrate Judge**